CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

JARED S. BUSZIN (NYBN 5285838)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7234
    Jared.Buszin@usdoj.gov

Attorneys for United States of America

**FILED**

Jan 09 2026

Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 25-CR-430 SI |
| Plaintiff, | MEMORANDUM IN SUPPORT OF UNITED STATES' MOTION FOR DETENTION |
| v. | |
| JOSE ALFREDO PEREZ, | |
| Defendant. | |

**INTRODUCTION**

An investigation conducted by the FBI in Sonoma County revealed that in 2024 and 2025, defendant Jose Alfredo Perez built and supplied more than twenty unserialized assault weapons to leaders of the Angelino Heights Sureño street gang who were convicted felons. Those gang members then sought to sell the assault weapons for thousands of dollars, which they successfully did on multiple occasions in purchases conducted by undercover law enforcement personnel and a confidential source ("CHS") working with the FBI.

In April 2025, law enforcement executed a search warrant at Perez's residence and found dozens of firearms along with substantial evidence of a makeshift firearms manufacturing workshop in Perez's garage and backyard toolshed. A post-search interview of Perez and review of his cell phones further

UNITED STATES' DETENTION MEMORANDUM    1
25-CR-430 SI

revealed that Perez *knew* he was providing assault weapons to dangerous gang members, along with the fact that he had other customers whom he was seeking to supply with firearms.

As a result, Perez has been charged in a three-count indictment with offenses relating to his manufacturing and dealing firearms without a license and supplying firearms to others having reasonable cause to believe the recipients' use, carrying, or possession of the firearms would constitute a felony. In light of the charges and Perez's relevant conduct, he faces the prospect of a lengthy federal prison sentence, notwithstanding his relative lack of prior criminal convictions. Indeed, the government estimates he presently faces an advisory sentencing range of 135-168 months imprisonment based on the number and type of untraceable firearms Perez was providing to dangerous, convicted felons for profit.

Upon consideration of the record, clear and convincing evidence demonstrates Perez is a danger to the community and a preponderance of the evidence suggests that he presents a risk of nonappearance. Accordingly, the Court should order him detained pending trial.

## I.      FACTUAL BACKGROUND

### A.      Perez Builds Assault Weapons for the Leader of the Angelino Heights Street Gang

No later than late summer and early fall of 2024, Perez began supplying the leader of the Angelino Heights Sureño street gang in Santa Rosa—Juan Carlos Gomez Mendoza—with unserialized assault weapons. Around this time, business records show Perez purchasing numerous kits to build unserialized weapons from out-of-state suppliers, which he would continue to purchase regularly for many months going into 2025. The firearms parts that Perez purchased included unserialized 80% lower receivers for rifles,[1] which could not be legally shipped to California. As a result, Perez ordered the lower receivers for delivery to addresses outside of California and had Gomez Mendoza coordinate transporting the lower receivers to him in Sonoma County, where he used them to build assault weapons.

On September 25, 2024, the FBI conducted a controlled purchase using the CHS, who bought

---

[1] A lower receiver houses the trigger, grip, and stock of a rifle, acting as the foundation for a completed firearm. Under federal law, the lower receiver is legally considered to be a firearm and is subject to registration requirements. An 80% lower receiver is unfinished insofar as it still needs the final holes to be drilled for the grip, trigger and trigger assembly. An 80% lower is considered 80% "complete" and not yet a firearm under federal law. They are often purchased in order to circumvent registration requirements for completed firearms.

UNITED STATES' DETENTION MEMORANDUM      2
25-CR-430 SI

from Gomez Mendoza multiple firearms, more than 1,000 rounds of ammunition, and a Glock switch that would convert a semiautomatic firearm into a fully automatic machinegun. The firearms sold to the CHS included three unserialized assault weapons built by Perez.

**Unserialized Firearms from September 2024 Controlled Buy**



About a month after the September 25 controlled buy, Gomez Mendoza told the CHS that he had seven rifles available for sale and sent him a picture of the assault weapons:



UNITED STATES' DETENTION MEMORANDUM        3
25-CR-430 SI

As the FBI's investigation would later reveal, the photo of the seven assault weapons sent by Gomez Mendoza was taken in Perez's garage. Around the same time as Gomez Mendoza's messages to the CHS regarding the seven rifles, Perez sent one of his contacts a video showing the same assault weapons. When the contact asked Perez if the guns were his, he responded in Spanish, "Yes, until they pay me."

About two weeks later, in connection with a separate investigation, members of the Santa Cruz County Anti-Crime Team arranged for a controlled purchase of firearms and counterfeit M30 fentanyl pills from Gomez Mendoza. The guns that the undercover officer bought from Gomez Mendoza in that sale closely resemble the assault weapons depicted in the video and picture sent by Perez and Gomez Mendoza, respectively, about two weeks before.

**Unserialized Firearms from November 2024 Controlled Buy**



On December 6, 2024, the FBI's CHS conducted another controlled purchase of items from Gomez Mendoza, who brought along fellow Angelino Heights gang member Ricky Ponce to assist with the sale. In that transaction, Gomez Mendoza and Ponce sold the CHS two unserialized assault weapons built by Perez, one serialized AR-15 rifle, more than 800 rounds of ammunition, and rifle magazines.[2]

---

[2] Perez is not believed to have been the supplier of the serialized firearm sold to the CHS on this date.

UNITED STATES' DETENTION MEMORANDUM    4
25-CR-430 SI

**Items Sold to CHS During December 2024 Controlled Buy**



On January 3, 2025, California Highway Patrol conducted a traffic stop of a vehicle being driven by Gomez Mendoza. During two searches of the car, officers found fourteen firearms, hundreds of rounds of ammunition, more than 1,500 M30 fentanyl pills, methamphetamine, and several pounds of marijuana.

**<u>Certain Items Found in Gomez Mendoza's Vehicle During January 3, 2025 Arrest</u>**



Text messages sent by Perez, Gomez Mendoza, and Ponce seized during the government's investigation revealed that Perez was the builder/supplier of the eleven unserialized assault weapons that California Highway Patrol found in Gomez Mendoza's vehicle.  For example, on December 15, 2024, Gomez Mendoza sent Perez a message stating, "How much time for ten my other buyers asking."  In response, Perez wrote: "A week there's 20 lowers getting there Tuesday and 10 uppers hopefully by Friday so I can bust ass and get them over the weekend."

Seized text messages from this time period further revealed that Gomez Mendoza planned to sell the firearms recovered on January 3 to an unknown buyer, and that Perez had advised him to make sure none of the firearm parts they were acquiring had serial numbers, telling him "the less paper trail the better."  The day after Gomez Mendoza's January 3 arrest, Perez texted Ponce expressing concern that he could be connected to the firearms, writing "could this come back to us" and "[Gomez Mendoza]'s on probation isn't he[]?"

UNITED STATES' DETENTION MEMORANDUM    6
25-CR-430 SI

**B.     Perez Continues to Supply Firearms to Angelino Heights Members After Gomez Mendoza's Arrest**

After his January 3 arrest, Gomez Mendoza remained in custody in Solano County and Angelino Heights gang member Ricky Ponce became the FBI CHS's primary point of contact.  On February 25, 2025, Ponce sold the CHS three unserialized AR-style assault weapons, rifle ammunition, and counterfeit M30 fentanyl pills.

**<u>Unserialized Firearms from February 2025 Controlled Buy</u>**



Text messages sent by Perez and Ponce that were seized during the government's investigation revealed that, notwithstanding Gomez Mendoza's arrest, Perez continued to supply Ponce with unserialized assault weapons to sell, including the three firearms purchased by the CHS on February 25. In particular, those messages showed that Perez sent Ponce pictures of assault weapons he had for sale, which Ponce then sent to the CHS.  The messages also showed Perez and Ponce discussing pricing for the firearms, including a discount Perez provided because Gomez Mendoza had assisted him in getting lower receivers to build the rifles, as noted above.[3]

**C.     Law Enforcement Finds Dozens of Firearms and Evidence of Firearms Manufacturing at Perez's Residence**

In April 2025, law enforcement executed a state search warrant authorizing the search of Perez,

---

[3] On February 17, 2025, in anticipation of the February 25 controlled buy, Ponce asked Perez via text message, "What were u and my bro doing the price at ?"  Perez responded, "950 for regular and 11 on the big boys since you guys helped to get the lowers to me it's usually 1k and 12."

UNITED STATES' DETENTION MEMORANDUM     7
25-CR-430 SI

his residence, associated vehicles, and digital devices.

In the backyard of Perez's residence, officers located a makeshift firearms manufacturing workshop in a tool shed. Several firearms frames, receivers, and precursor parts were located in the shed along with other assault weapons parts. The workshop contained several rifle lower receivers that were unserialized and had been drilled for building AR-style rifles. Several toolboxes were located in the shed including one which was labeled "AR 80 KIT AND PARTS."[4] Additional firearms and firearms parts were located in the shed including barrels, upper receivers, slides and pistol parts as well as two pistols.

In Perez's garage, officers found additional parts for assembling AR-style rifles as well as tools and machinery used for building weapons. This included an armorer's wrench specifically designed to assemble AR-style firearms and a 3-D printer, which is commonly used to manufacture lower receivers for rifle and pistols from plastic. Inside the garage, officers also found numerous firearms and thousands of rounds of ammunition.

Firearms registered to Perez were also located throughout the residence. Over the course of the search warrant operation, officers determined that Perez's residence contained fewer firearms than the number registered to him according to the Automated Firearms System, which indicated he owned approximately 44 serialized, registered firearms. Perez was interviewed and told officers he had purportedly given some firearms away over the years and had others stolen, which he had not reported as such. During that interview, Perez made numerous false exculpatory statements, claiming for example that he had been building only upper receivers (and not completed firearms) for others and that these individuals were gang members who had pressured him to do so.

## II.    LEGAL STANDARD

Under the Bail Reform Act of 1984, the Court must detain a defendant before trial without bail where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Detention is appropriate where a defendant is either a danger to the community or a flight risk; the government need

---

[4] "80" likely refers to an 80% lower receiver for AR-15, AR-9, or AR-308 rifles.

UNITED STATES' DETENTION MEMORANDUM    8
25-CR-430 SI

not prove that both factors are present. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). A finding that a defendant is a danger to the community must be supported by clear and convincing evidence, but a finding that a defendant is a flight risk need only be supported by a preponderance of the evidence. *Id.*

"[T]he Bail Reform Act mandates an individualized evaluation guided by the factors articulated in [18 U.S.C.] § 3142(g)." *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019). Those factors are: (i) the nature and circumstances of the offense charged; (ii) the weight of the evidence against the defendant; (iii) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the defendant was on probation or parole; and (iv) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

**III.    ARGUMENT**

As an initial matter, the Court is obligated to hold a detention hearing in this matter upon the government's motion because the case involves a felony that involves the possession or use of a firearm. 18 U.S.C. § 3142(f)(1)(E).  Setting that threshold issue aside, the Court should order Perez detained pending trial because clear and convincing evidence establishes he is a danger to the community and a preponderance of the evidence establishes that he presents a risk of nonappearance.

As to the nature and circumstances of the offense and the danger Perez's release poses to the community, the offense conduct summarized above shows that Perez repeatedly introduced extremely dangerous and untraceable assault weapons into the community.  In doing so, Perez provided them to individuals, such as Gomez Mendoza, who Perez himself described as dangerous gang members with criminal records.  Indeed, Gomez Mendoza has a prior felony conviction for carjacking and assault with a deadly weapon, resulting in an 8-year state prison sentence, while Ponce has a prior felony conviction for unlawfully possessing an assault weapon.  Furthermore, Perez was not deterred from engaging in his criminal conduct after Gomez Mendoza's January 2025 arrest, even though he was aware it would potentially result in him coming under law enforcement scrutiny.  And Perez's own seized

communications showed that Gomez Mendoza and Ponce were not the only customers for whom Perez was building and supplying assault weapons.

The weight of the evidence in this case is also strong. Third-party business records show Perez ordering parts to build assault weapons throughout the relevant time period. Video recordings show Gomez Mendoza and Ponce distributing assault weapons built by Perez and subsequently meeting with him soon after distributing the guns. Text messages sent by Perez, Gomez Mendoza, and Ponce that were seized by law enforcement clearly demonstrate Perez's commission of the charged offenses. The physical evidence seized at Perez's residence provides further corroboration of his assault weapon manufacturing operation.

Because of the seriousness of the offense conduct and the strength of the evidence, Perez faces likely conviction and an advisory sentence of 135-168 months imprisonment based on the government's initial sentencing analysis. This presents Perez with a strong incentive to flee to avoid those consequences, notwithstanding his present ties to the community in this district.

## CONCLUSION

For the reasons stated above, there is no set of conditions that will reasonably assure the appearance of the defendant at court proceedings or ensure the safety of the community. The Court should therefore order the defendant detained pending trial.

DATED: January 9, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney


_____/S/_____
JARED S. BUSZIN
Assistant United States Attorney

UNITED STATES' DETENTION MEMORANDUM     10
25-CR-430 SI